UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATIMAH INAS McGEE,

       Petitioner,   Case No. 18-cv-10023
                                                                            Hon. Matthew F. Leitman
v.

SHAWN BREWER,

       Respondent.
_____/

**ORDER (1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 5), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Fatimah Inas McGee is a state prisoner in the custody of the Michigan Department of Corrections. In 2014, McGee pleaded guilty to one count of second-degree murder (Mich. Comp. Laws § 750.317) in the Wayne County Circuit Court. Pursuant to the terms of her plea agreement, the state trial court then sentenced McGee to 20-to-40 years of imprisonment.

On January 3, 2018, McGee filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) McGee then filed an amended petition after she completed exhausting certain claims in state court. (*See* Am. Pet., ECF No. 5.) In the amended petition, McGee presents the following seven claims: (1) she was coerced into pleading guilty by her trial counsel, (2) the

sentencing guidelines were scored incorrectly, (3) she was denied her right to present a defense when her trial counsel failed to discover and present evidence of her innocence, (4) her trial counsel was ineffective for failing to present a defense, (5) the state trial court denied her right to counsel of choice, (6) she was denied the effective assistance of appellate counsel, and (7) the state trial court erroneously assessed attorney fees. (*See id.*)

The Court has carefully reviewed the petition, and for the reasons explained below, it concludes that McGee is not entitled to federal habeas relief. The Court will therefore **DENY** the petition. The Court will also **DENY** McGee a certificate of appealability. However, it will **GRANT** her leave to appeal *in forma pauperis*.

**I**

On May 31, 2014, McGee's ex-boyfriend, Micah Davis, was shot to death in his home. McGee and others were subsequently charged with several offenses in connection with Davis' death. At McGee's preliminary examination, Davis' mother and girlfriend testified that McGee and other individuals arrived at Davis' house on the night of the shooting and engaged in a heated argument. (*See* Prelim. Exam. Tr., ECF No. 9-5.) McGee left, but later that night, certain individuals returned and shot and killed Davis. (*See id.*) At the conclusion of the preliminary examination, McGee was bound over for trial on open murder and other charges on an aiding and abetting theory. (*See id.*)

McGee could not afford counsel so the state trial court appointed counsel for her. Prior to trial, McGee's trial counsel moved to dismiss the charges based on the insufficiency of the evidence. The state trial court denied that motion. (*See* Mot. Hr'g Tr., ECF No. 9-2.)

About one week after the denial of her motion to dismiss, McGee accepted a plea bargain. (*See* Plea Hr'g Tr., ECF No. 9-3.) During the plea colloquy, McGee's trial counsel indicated that the prosecutor had offered "murder two with twenty to forty for my client." (*Id.*, PageID.242.) The prosecutor said that if convicted of first-degree murder after a trial, McGee faced life imprisonment without parole, and if she was convicted after a trial of second-degree murder, the prosecutor would ask for a sentence of "thirty to probably fifty [years.]" (*Id.*, PageID.243.)

After a sidebar, the state trial court directed McGee to consult again with her trial counsel "one final time," and it told her that it would "not tak[e] a plea after today." (*Id.*, PageID.244.) The Court then said that if McGee felt there was a breakdown in communication with her counsel that it would appoint a new attorney for her, but that this was the last day the court would accept a plea. (*See id.*) The court directed counsel to speak with McGee about "all the consequences and all the options … talk about the merits of the case, talk about the prosecutor's position, and let me know what her decision is." (*Id.*)

The case was recalled after a half-hour break, and McGee's trial counsel told the state trial court that McGee had informed her that she would accept the plea offer. (*See id.*, PageID.245.) McGee was then placed under oath. (*See id.*) She told the court that she signed and dated the written plea agreement. (*See id.*) She also affirmed that she wished to plead guilty to second-degree murder, and that there was a sentence agreement to serve twenty to forty years in prison. (*See id.*, PageID.246.)

The state trial court informed McGee of the rights that she was waiving by entering her plea, and McGee acknowledged that she understood she was waiving those rights. (*See id.*, PageID.247-248.) The court thereafter asked McGee if any promises or threats [had] been made to you to get you to plead guilty?" (*Id.*, PageID.248.) And McGee responded, "no." (*Id.*)

McGee then testified to a factual basis for the plea. She testified that on the night of Davis' death, she went to the Davis' home after enlisting the help of two individuals "to go to that property and assault Micah Davis." (*Id.*, PageID.249-250.) McGee also acknowledged that there had been a confrontation earlier at that home between her, Davis, and other individuals. (*See id.*, PageID.250.) McGee testified that she paid the individuals $160 to help her assault Davis. (*See id.*) After denying that she knew the men later returned to Davis' house with a gun, McGee nevertheless agreed that Davis' shooting death was caused by someone that she had hired to

"assault or endanger" Davis. (*Id.*, PageID.251-253.) The stat trial court found that McGee's plea was understanding and voluntary. (*See id.*, PageID.253.)

At McGee's sentencing hearing, McGee's trial counsel told the court that McGee wished to withdraw her plea. (*See* Hr'g Tr., ECF No. 9-4, PageID.258-260.) McGee then addressed the court personally, and she said that at the time of her plea, she expressed that she wanted a new attorney, but her counsel told her that no one else would take her case. McGee said she "felt pressured into taking a plea if no one else was going to take my case and I didn't want to take [defense counsel] into trial. I didn't feel like she was going to represent me to the fullest of her ability." (*Id.* PageID.265.) McGee's trial counsel disputed the allegation that she was unprepared, and she replied that she had told McGee at the time that someone else could be appointed as counsel, but that McGee would lose out the ability to accept the plea deal if McGee did not plead guilty that date. (*See id.*, PageID.265-266.) The state trial court ultimately denied the motion based on McGee's failure to raise her claims about her trial counsel at her plea hearing. (*See id.*, PageID.266.) The court thereafter sentenced McGee according to the terms of the plea agreement.

Following her sentencing, McGee requested and was appointed appellate counsel. New counsel then filed a motion to withdraw McGee's guilty plea. (*See* Mot. to Withdraw Plea, ECF No. 9-6.) The state trial court denied the motion. It

5

again found that McGee "specifically swore under oath … that there were no threats or promises that led her to plead guilty." (*See* St. Ct. Tr., ECF No. 9-7, PageID.385.)

McGee then filed an application for leave to appeal in the Michigan Court of Appeals, raising two claims:

> I. Defendant's state and federal constitutional rights were violated when she was coerced into taking a plea because her attorney was not acting in her best interest and told her that if she did not plead she would lose at trial and her attorney was ineffective.
>
> II. Ms. McGee is entitled to resentencing where the sentencing guidelines are now only advisory and the guidelines were misscored and defendant's sentence is unreasonable and defense counsel was ineffective for failing to raise these issues at sentencing.

The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. McGee*, No. 330275 (Mich. Ct. App. Feb. 12, 2016). McGee then filed an application for leave to appeal in the Michigan Supreme Court, but her application for leave to appeal was denied by standard form order. *See People v. McGee*, 885 N.W.2d 253 (Mich. 2016) (Table).

McGee thereafter returned to the state trial court and filed a *pro se* motion for relief from judgment. In that motion, McGee raised the following five claims:

> I. Ms. McGee was denied a fair trial and the right to present her defense when, whether due to trial counsel's ineffectiveness, or because it has only recently been discovered, evidence was not introduced which would have maintained and supported her claim of innocence.

6

> II. Defendant's right to effective assistance of trial counsel was denied in violation of the U.S. Constitution, Sixth Amendment and Mich Const 1963, Art 1 §§ 17, 20.
>
> > a. Defendant-Appellant was denied her Sixth Amendment right to the effective assistance of counsel where her trial attorney failed to present or failed to discover through a reasonable investigation evidence which would have directly contradicted the prosecution's assertion that defendant-appellant committed the accused crimes.
> >
> > b. Defendant was denied effective assistance of counsel by virtue of her attorney's failure to perfect a possible defense.
>
> III. Defendant is entitled to a new trial because there was a breakdown in the relationship between defendant and defense counsel, and because the trial judge failed to conduct an adequate inquiry into the breakdown.
>
> IV. Defendant is entitled to relief because she was denied her right to the effective assistance of appellate counsel in violation of U.S. Const, Fourteenth Amendment and Mich Const 1963, Art. 1 § 20.
>
> V. The cumulative effect of the errors committed at trial deprived appellant of her state and federal rights to a fair trial.

While that motion was still pending in the state trial court, McGee filed her habeas petition in this Court. (*See* Pet., ECF No. 1.) McGee also filed a motion to stay consideration of her petition while she pursued her motion for relief from judgment in the state courts. (*See* Mot., ECF No. 2.) The Court granted that motion on January 9, 2019. (*See* Order, ECF No. 4.)

7

On June 19, 2018, the state trial court denied McGee's motion for relief from judgment in a written order. (*See* St. Ct. Order, ECF No. 9-14.) The court concluded that McGee failed to establish "good cause" under Michigan Court Rule 6.508(D)(3) for failing to raise her new claims on direct appeal. (*See id.*, PageID.760-761.)

McGee then filed an application for leave to appeal in the Michigan Court of Appeals. That court denied leave to appeal because McGee "failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. McGee*, No. 346918 (Mich. Ct. App. March 20, 2019). (*See* ECF No. 9-12, PageID.653.) The Michigan Supreme Court thereafter denied leave to appeal by form order. *See People v. McGee*, 934 N.W.2d 238 (Mich. 2019) (Table).

On December 20, 2019, McGee filed an amended petition in this Court raising the claims identified above. (*See* Am. Pet., ECF No. 5.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's

8

determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

### III

### A

In McGee's first claim, she asserts that her appointed trial counsel coerced her into pleading guilty and that the state trial court erred when it denied her motion to withdraw her plea. The state trial court rejected that claim on the merits because McGee denied the existence of any threats during the plea hearing. (*See* St. Ct. Tr., ECF No. 9-14, PageID.384-385.) The Michigan Court of Appeals thereafter denied relief for "lack of merit in the grounds presented." (ECF No. 9-10, PageID.463.)

The state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law. In general, a defendant is "bound to the answers [she] provides during a plea colloquy." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). And here, as described above, McGee testified on the record at her plea hearing that no threats had been made to persuade her to plead guilty. (*See* Plea Hr'g Tr., ECF No. 9-3, PageID.248.) Under these circumstances, and given her sworn admission at the plea hearing, McGee has not shown how the state court's rejection of this claim was unreasonable. McGee is therefore not entitled to federal habeas relief on this claim. *See, e.g.*, *White v. Rewerts*, 2021 WL 4034277, at ** 12-17 (E.D. Mich. Sept. 3, 2021) (explaining that clearly established federal law does

not require a state court to permit a criminal defendant to withdraw a plea where the defendant's sworn statements during his plea colloquy contradict the basis on which the defendant seeks to withdraw the plea).

Moreover, the state trial court had offered to alleviate the pressure that McGee first identified as causing her to plead guilty. As noted above, McGee first claimed that she felt pressure to plead guilty when she appeared before the trial court for sentencing. At the sentencing hearing, McGee told the court that she had felt pressure to enter a guilty plea earlier because she believed that her lawyer was unprepared, she did not feel comfortable going *to trial* with that lawyer defending her, and she was told by her lawyer that no other lawyer would take her case. (*See* Hr'g Tr., ECF No. 9-4, PageID.258-260.) However, before McGee entered her plea at the plea hearing, the trial court had offered to appoint new trial counsel for McGee – thereby ensuring that she would *not* have to face trial with her current counsel and that she *would* have new counsel if she chose to proceed to trial. (*See* Plea Hr'g Tr., ECF No. 9-3, PageID.244.) These circumstances underscore that it was not unreasonable for the Michigan state courts to conclude that McGee's plea was not the result of undue pressure.

## B

In McGee's second claim, she argues that the state trial court erroneously (1) scored the sentencing guidelines and (2) based the scoring on facts not proven

10

beyond a reasonable doubt. McGee raised these claims in the Michigan Court of Appeals, and that court denied the claims for "lack of merit in the grounds presented." (ECF No. 9-10, PageID.463.)

McGee has not shown that she is entitled to federal habeas relief on these claims. First, to the extent that McGee challenges the state trial court's scoring of the sentencing guidelines, that claim is not cognizable in a federal habeas proceeding. Claims that a state trial court incorrectly scored, calculated, or applied state sentencing guidelines are state-law claims. Indeed, "[a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). And "federal habeas corpus relief does not lie for errors of state law." *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). *See also Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Thus, McGee's claim that the state trial court erred when it scored the sentencing guidelines is not cognizable in this action.

Second, to the extent that McGee says that the state trial court erred when it based her sentence on facts not proven beyond a reasonable doubt, McGee has not shown that the rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. Simply put, McGee has not cited any authority – from the Supreme Court or otherwise – that could support the proposition that a state

11

court violates a petitioner's constitutional rights where (1) the petitioner agrees to a sentencing range in a plea agreement and (2) the state court sentences the petitioner consistent with that agreed-upon range. *See*, *e.g.*, *Davis v. Winn*, 2018 WL 2996946, at *7 (W.D. Mich. June 15, 2018) (citing cases and holding that petitioner had "waived his objection to the court's scoring of the guidelines by agreeing [to] a specific sentence" in a plea agreement); *Williams v. Nagy*, 2019 WL 5788596, at **4-5 (E.D. Mich. Nov. 6, 2019) (denying habeas relief and holding that the "prohibition on the use of judge-found facts" had "no application" to habeas petitioner's case where petitioner "was sentenced based upon the sentence set forth in his plea agreement, not based upon the scoring of the offense variables or the sentencing guidelines").

For all of these reasons, McGee has not shown that she is entitled to federal habeas relief on this claim.

## C

McGee's third through seventh claims were raised for the first time in her post-conviction motion for relief from judgment in the state trial court and the appeal that followed the denial of that motion (the "Post-Conviction Claims"). Respondent argues that habeas review of the Post-Conviction Claims is procedurally barred because the state trial court denied relief on those claims based on Michigan Court Rule 6.508(D)(3). That rule prohibits a defendant from raising claims on state

collateral review that were not raised on direct appeal absent a showing of "good cause" and "actual prejudice." The Court agrees.

Claims that are rejected by a state court on independent state procedural grounds are barred from subsequent federal habeas review absent a showing of cause to excuse the failure to comply with the rule and prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this case, the state trial court denied McGee relief on the Post-Conviction Claims because McGee failed to demonstrate good cause or actual prejudice resulting from the failure to raise those claims on direct appeal as required by Michigan Court Rule 6.508(D)(3)(b). (*See* St. Ct. Order, ECF No. 9-14, PageID.760-761.) The basis for that decision constitutes an independent and adequate state procedural ground. *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007). Thus, the Post-Conviction Claims are defaulted.

To demonstrate entitlement to federal habeas review of the defaulted Post-Conviction Claims, McGee must establish either (1) cause for the default and prejudice from the alleged constitutional violation, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. McGee has not satisfied either of these alternatives here.

In McGee's sixth claim, she argues that her appellate attorney's ineffectiveness constitutes the required cause and excuses her default. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (holding that ineffective assistance of

13

appellate counsel may constitute cause excusing a procedural default). However, an attorney is not required "to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Thus, a failure to raise a claim on appeal will generally constitute deficient performance only if the omitted claim is "clearly stronger" than the claims raised on direct review. *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Here, McGee has failed to show that any of the omitted claims were "clearly stronger" than the ones raised by her appellate attorney. For example, McGee's third and fourth habeas claims, asserting that she was denied the right to present a defense and was denied the effective assistance of counsel, hinges on the affidavit of Lutisha Tolbert. (*See* Tolbert Aff., ECF No. 9-9, PageID.438.) Tolbert also pleaded guilty to second-degree murder in relation to Davis' death. (*See* St. Ct. Order, ECF No. 9-14, PageID.759.) In an affidavit dated March 14, 2017, Tolbert claims that she was present during the relevant events, and she says that McGee did not instruct the men involved to shoot Davis. (*See* Tolbert Aff., ECF No. 9-9, PageID.438.) She claims instead that McGee only paid the men to retrieve her keys from Davis. (*See id.*) But there are several reasons why McGee's appellate counsel may have chosen not to

14

raise trial counsel's failure to present a defense based on the information in Tolbert's affidavit.  First, the claims in Tolbert's affidavit that McGee simply wanted to retrieve her keys from Davis are in direct conflict with McGee's own sworn statements during her plea colloquy that she had sought to "assault" Davis. (Plea Hr'g Tr., ECF No. 9-3, PageID.249-251.)  Second, as Tolbert acknowledged in her affidavit, she had previously asserted that McGee had hired two men to "beat down" Davis. (Tolbert Aff., ECF No. 9-9, PageID.438.)  Thus, the version of events in Tolbert's affidavit was a new one.  And McGee has not presented any evidence that Tolbert would have offered this new version – as opposed to sticking with her old version – had McGee's lawyer contacted Tolbert before the scheduled trial.  Finally, Tolbert's affidavit was self-serving and sought to downplay Tolbert's own role in Davis' death.  Under all of these circumstances, a claim on direct appeal related to Tolbert's affidavit would not have been "clearly stronger" than the claims appellate counsel did present.

    McGee's fifth habeas claim, her counsel of choice claim, is likewise not "clearly stronger" than the claims raised in her direct appeal. McGee has not identified anywhere in the record where, prior to her plea, she made an unequivocal request for substitute counsel to the state trial court. Moreover, despite McGee not expressly making such a request, the state trial court nevertheless offered to appoint

15

new counsel for McGee if she wished, but McGee instead elected to proceed with her plea.

Finally, McGee's final claim that she was erroneously ordered to pay attorney fees was not unreasonably omitted by her appellate counsel because it was not a claim that attacked the validity of either McGee's conviction or sentence.

Under these circumstances, because none of the Post-Conviction Claims are "clearly stronger" than the ones presented on direct review, McGee has failed to establish that her appellate attorney rendered ineffective assistance during her direct appeal. Thus, McGee has not demonstrated cause to excuse her procedural default of failing to raise these claims on direct appeal.

The final exception to the procedural default rule allows for review of a claim where constitutional error has probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). A claim of actual innocence must be supported with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). McGee has not presented such evidence here. To the extent that she relies on Tolbert's affidavit to establish her actual innocence, for the reasons explained above, that affidavit does not constitute new reliable evidence of McGee's actual innocence.

16

McGee has therefore failed to demonstrate an entitlement to review of the defaulted Post-Conviction Claims.

## IV

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless the Court issues a certificate of appealability under 28 U.S.C. § 2253. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **DENIES** McGee a certificate of appealability because jurists of reason could not debate the Court's conclusion that McGee has failed to demonstrate an entitlement to habeas relief on any of her claims.

Although the Court declines to issue McGee a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although

17

jurists of reason would not debate this Court's resolution of McGee's claims, an appeal could be taken in good faith. Therefore, McGee may proceed *in forma pauperis* on appeal.

V

Accordingly, for all the reasons stated above, **IT IS HEREBY ORDERED** that (1) McGee's amended petition for a writ of habeas corpus (ECF No. 5) is **DENIED WITH PREJUDICE**, (2) McGee is **DENIED** a certificate of appealability, and (3) McGee is **GRANTED** permission to appeal *in forma pauperis*.

Dated: June 24, 2022

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 24, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126